Good morning, Your Honors. May it please the Court. I'm Rita Griffith, and I'm here on behalf of Sergei Spitsyn, who's appealing the district court's dismissal of his habeas corpus petition. The question presented in this appeal is whether the one-year statute of limitations of the anti-terrorism and effective death penalty statute should be Another way of stating it is, should it be told, where his hired attorney actively deceived him and lulled him into believing that the petition was being prepared to be filed. And then when it became apparent that there was a problem, refused to return Mr. Spitsyn's file to him until the Washington State Bar Association intervened. What does the record show as to that representation, that he was going to file it and would file it in a timely manner? Well, there was an agreement that I believe is in the record between Mr. Spitsyn's mother. Mr. Spitsyn was in prison at the time for, I think, as I recall, $3,000, and he agreed and later admitted to the Bar Association that he did have a contract. That's an agreement to do it, but you said he represented that he would do it and he would do it timely and so forth. Are you referring to the agreement? I am referring to the agreement, and then there are other letters that we have that were submitted by Mr. Spitsyn's mother, indicating that she had inquired and that she had been informed that the reason that there had been a delay was he was going to contact some witness. I'm not sure in what regard. So there are letters in the record from the lawyer to the mother indicating the reasons for the delays. I believe that the letters are from the mother responding to what you – I want to know what you have in the record from the lawyer other than the agreement concerning what he was doing in that year. I think he did it – we have a letter in the record admitting to the Bar Association that he was – that he was – that he was doing it and he didn't inform – okay. My question is – We don't have a retainer agreement from – My question is during the year that he was retained to file. Right. What information did he give to his client or his client's mother concerning the status of the case and what he was doing, if any? Well, the only thing that we have in the record that I'm aware of is the letter to him by the mother saying I understood that the delay was for this reason and there are other inquiries. Did he answer those letters? No. Okay. Well, that I don't know. I don't know that. I just know what was submitted in the habeas petition. We also have letters from Mr. Spitzen to Mr. Huffines, the attorney, saying what's going on here? Please respond. We have him filing the grievance. And here I think the critical thing is that these happened before the deadline passed, that a month before the deadline he – well, it's not quite a month, but almost a month. He went to the Washington State Bar Association, asked for help in getting some information from his attorney, and he also wrote to the attorney and said give me back my file. And this didn't happen for four months after the deadline had passed. And I think that's critical here. Well, I don't know. Perhaps I don't need to set out the test, but the test for when the statute should be equitably told is when circumstances essentially make it beyond the suspect – I mean the suspect, I'm sorry. The prisoner, I guess, is what we call our clients in this indication, beyond his control. Those circumstances have to be extraordinary, don't they? I think they have to be extraordinary circumstances. How do you deal with our precedent? What bothers me about this case, although it sort of bothered a little on both sides because there are some compelling circumstances that you make, that you point out about being lulled into not doing something. That's possible. But what do you make of our precedent in Brambles v. Duncan and Fry v. Hickman, which seems to me to run against the arguments being presented? And I have to say that in the case of a – it seemed to suggest to me in my reading that in the case of a prisoner like this, because the prisoner can file their own petition, that negligence of their lawyer in not filing isn't sufficient for equitable tolling. Sorry, I didn't mean to cut you off. I think that it's very important to make the distinction here. This is not a claim – I mean, my understanding of the rationale of Fry v. Hickman in those cases is that you're not entitled to an attorney for a habeas corpus petition, and therefore you're not entitled to the effective assistance of counsel. I don't think that speaks very well for us as attorneys, but that seems to be the law. We can't do anything about that if that's – Right. Our panel. Even if that's nonsensical, our panel can't change. I didn't mean to digress and get off the point. I think it's the important and crucial point of this case. Mr. Spitzen is not claiming that he was misadvised about the deadline, that his attorney was negligent, or that he – the merits of the petition, which were never filed by the attorney, somehow is the problem. The problem is that the attorney actively and intentionally deceived him, failed to respond to him, and kept his file. And I don't think there's a way in the world – There's some evidence of delay in returning the file, but I want to go back to the question Judge Alarcon asked at the start. You're saying the lawyer deceived him, and maybe did or maybe didn't, but I wasn't sure what was in the record that would show active deceit. Now, if, for example, the lawyer took the case and the mother says, Will you take this case? I'll give you $3,000. And the lawyer says, I'll evaluate whether a petition can be filed, and takes the money and then evaluates it and decides there's nothing worth filing, that there's no deceit. But on the other hand, if the lawyer says, I will definitely file a petition, knowing that he's not going to file a petition, that would be a type of fraudulent deceit. I mean, what's in the record that tells us what was agreed here and what is the active deceit of the lawyer? I think it makes no difference whether he said he was going to evaluate it and file a petition or whether he 100 percent agreed. The fact of the matter is that he would not respond to inquiries by Mr. Spitson or his mother, and he would not respond in a timely manner, which is before the deadline, to request, I want my file back, you are jeopardizing me. And those are clearly in the record. And the attorney held on to the file. I don't think that he could have gotten another attorney to do the case for him or done it by himself without the file. And that's the active deceit. I think if you look again at the letters that Mr. Huffines wrote to the Bar Association admitting that he himself came to the conclusion that there were no meritorious issues to raise, of which I would certainly contest, but that isn't the issue either. But he didn't communicate that to his client. And I think when someone is sitting on your file and refusing to respond to you, that's quite different than an attorney in good faith negligently determining the wrong date. Which is saying that the extraordinary circumstance is that the lawyer has decided he's not going to file a petition, but he doesn't tell the client and holds the file when the client asks for it back. Precisely. The State has argued here Mr. Spitzen could have filed his own petition, which he ultimately did, or in the alternative, that he could have hired another attorney. But I think without his file, his transcripts, his papers, that that would have been impossible to do. And that's the real issue here. And that's what makes this case different from the Frye case. And I would say also if there's any question about the record, then I think the proper remedy should be to send it back to clarify that. There was no evidentiary hearing. And, in fact, the issues have the State has not, in my knowledge, really disagreed with any of the facts. They have asserted that Mr. Spitzen should have filed his own or hired another attorney. But I submit that no case law requires that you file it from memory. And, you know, it's one thing to do what I've done and pick up this one issue. But to file a habeas corpus petition on this record would be impossible without the file. And that's why I would ask you to find that it should be equitably told. I see that I did not my time's up and I didn't save any for rebuttal. So, anyway, I do appreciate your attention. Thank you. May it please the Court. I am John Sampson, Assistant Attorney General, representing the Respondent. The district court in this case correctly denied the petition because the petition was untimely and the petitioner did not establish a basis for equitable tolling. The standard is that there must be exceptional circumstances or extraordinary circumstances that are the but-for approximate cause of the failure to file a timely petition. This Court has said that those circumstances must be external to the petitioner and that they made it impossible for him to file a timely petition. Where does the word impossible come in? Is that in a case like this? Your Honor, that standard is quoted from Miranda v. Castro, 292 Fed 3rd, and at 1067. And that standard applies here because it was not impossible. This is not a case such as United States v. Wynn where the attorney told the petitioner I've actually filed a petition. And when the petitioner contacted the court and they came back to the attorney, the attorney again lied and said, oh, no, I filed it directly with the judge. That's why the clerk didn't. What's wrong with Ms. Griffith's argument that the lawyer's got the file and the lawyer's not, I guess, has determined there's nothing there, he's not going to file a petition. But the appellant, Mr. Spitson's asked for it back and the lawyer holds on to it and doesn't answer. In a murder case with a relatively complex record, what's wrong with the argument that that is sufficient to be an extraordinary circumstance because to use the word impossible makes it impossible for Mr. Spitson to get another lawyer to look at it and come up with a petition or to do his own petition out of memory without the file. What's wrong with that argument? There are several reasons wrong with it, Your Honor. The first being because this is a noncapital case, there is no right to counsel, so the errors of counsel are not external to the petitioner. They're accorded to the petitioner. I understand there's no right to counsel, but still, they've gotten the counsel. His mom got the counsel. The counsel's got the file. So why isn't it extraordinary that he can't get the file back? He can get the documents he needs through other sources. He could get a copy of the court of appeals opinion, which sets forth the issues he presented to the state courts. He can get the form to file a petition from the U.S. District Court or from the prison law library. He can do research in the prison law library. He can go to another attorney and hire another attorney to develop the case for him. And then all he is required to do is file the form petition. And then the state's burden under Rule 5 is to provide the transcripts, the state court briefing, and we do that on every basis when there's a pro se litigant and even when there's a petitioner represented by counsel. We provide all that material so he could at that point then tell the district court, these are the reasons I couldn't further develop my petition. Give me leave to amend my petition or to file a supplemental brief in support or to file or apply to the state's response. But at some point, I mean, it just seems to me that although a prisoner in this context doesn't have a right to counsel, at some point it's unrealistic to think that the prisoner could be sophisticated enough to know, well, I could file a kind of a rough outline petition without knowing what should be in it, and then I can have someone move to amend it or whatever. It just seems unrealistic. So what's the big deal? Why shouldn't the state have a heart and say, okay, your lawyer screwed you, pardon my language on this, and didn't give you your file back. We'll let you file a petition a little late. We'll agree to equitable tolling, and then we'll address your claim on the merits. The attorney's actions were unethical. The State Bar took action against him. That does not relieve his burden. Is that on the record, what action was taken? What's in the record, Your Honor, is in the excerpts of record, there is a copy of the State Bar's recommendation for his sanctions. I believe it was a censure or similar sanction. And that is at excerpts of record 52 through 53, and I believe there are some other documents in the excerpts as well. But the vast majority of petitioners file pro se petitions. They are they do have the tools to do this. What's troubling me here is this was not a pro se petitioner. He had retained counsel. He relied on retained counsel, made an agreement with him to protect his rights. And apparently, unless you can show me the record that what we heard earlier is wrong, there was never any communication that the attorney was not going to proceed, that the attorney thought the claims were frivolous. So like many clients, many of you, if you've ever been involved in a matter where you were represented by counsel, sometimes you have to wait. Sometimes you don't get responses to your letters. But you're still hopeful that someday before the statute is run, your attorney will do what you ask your attorney to do. So this is not the situation of a pro se. Your Honor, I can point to two documents, both letters from Mr. Spitson and his mother, excerpts of record 40 and excerpts of record 42. The first one, excerpts of record 40, is dated November 29, 2000, several months or three months before, two months before the expiration of the statute of limitations. The letter is from whom? From the petitioner's mother. Okay. And she states that she is worried about the lack of progress in preparation of the appeal. She can wait no or I can wait no longer, neither can my son. If I don't hear from you within a week, I will consider you as violating the agreement in my rights, in the rights as your client in this case. And then in December. Many lawyers get such letters. Yes, Your Honor. In December, the petitioner himself writes a letter saying that he was he is aware of the time limits imposed for Federal court petitions, that no other attorney would take his case with the short amount of time left in Federal court or to file habeas corpus, again showing he is aware of the approaching limitations. I'm not going to fire another attorney. No, Your Honor. Actually, he says, you leave me no choice but to take legal action against you. In other words, he's indicated in December 12th he doesn't consider him to be his attorney anymore and that he's going to take legal action against his attorney. He then does not file a petition at that time or attempt to file a petition at that time. What was the response to these letters? There was no response, according to the record. And I believe the attorney could produce no and the bar proceedings could produce no written correspondence to his client. The fact is, though, is in December, about a month and a half before the limitations period expired, the petitioner knew his attorney wasn't filing a petition. He did not then file a pro se petition. He also there's great talk about the failure to return the file. Even after he got the file in April of 2001, which was after the limitations period, he waited almost five months to file a petition. He didn't file it until September 25th, 2001 was the date he signed it. You'd be making the same argument if you filed the next day after getting the file, wouldn't you? We certainly would. We certainly would. But his failure to timely proceed even after getting the file indicates. He would say it was an untimely. It would be untimely. But even so, the delay in five additional months is further evidence as to why he's not entitled to equitable filing. If the time was told from the date he wrote the letter saying, like, I don't think you're my lawyer anymore, I'll have to take legal action or whatever, if you told the time from that time until he got the file, but it wasn't told before that, and then it wasn't told after he got the file, what would be the result? If it was told up to December 12th? No, if it was told from December 12th until the date he got the file. I'm not very good at math on my feet, Your Honor. I think it would still be untimely because he was 225 days past the statute of limitations when he did file it. So unless that time period was 225 days, it would be untimely. In total, he was 591 days past. And I'm going from the date he signed the petition, not the date it was actually received by the district court. When did he get the file? When did he receive the file? In April, Your Honor. The attorney sent it to him, I believe, April 5th is when it was mailed to him. I'm pretty sure from December to April, as bad as my math is, I don't think it's over 225 days. No, I believe it's four months. But if the lawyer wasn't doing anything throughout, should the time be filed from when he first got that lawyer, I mean, for the whole period until he got the file? No, Your Honor. I believe this panel is bound by the decisions in Frye and Miranda, which are cited in the State's brief. That time is not told. Mr. Griffin, could I ask another question? Take a little over and have Ms. Griffith give her a little rebuttal. So here's my other question. Assuming that the time should be equitably told, does that mean that his petition should be addressed, or is there like a harmless error analysis if he doesn't have any valid claim? Or is this record not really sufficient to tell us if he has a valid claim? The record is not sufficient. I believe if it is equitably told, it would be a timely petition. That's up to the district court to address. That's correct, Your Honor. Okay. We would ask that the court affirm the district court. Thank you. Ms. Griffith. Thank you very much. Could you take a minute? I'll address the equitable tolling is set out in the United States v. Ibarra by the United States Supreme Court that says you take the day when it stops being tolled, which I will say April 4th when he got his file back, you subtract from that any time that it had already run. I would suggest that it should be start when he hired the attorney and was lulled into believing that some progress was being made. And I think the fact that it took him five months to file the petition shows that he was, that he actually was filing a substantive petition. And I don't think the State should get to take the position that a person just has to file something with the words habeas corpus petition on it. This was a complicated case. And quite frankly, I think there's some real serious questions. Mr. Spitzin was 16 years old and a Russian immigrant that we're talking about. And I think he did everything he could to try to get his file back and to file a reasonable petition, and that it should be tolled and that the Ibarra case sets forth how you figure out when it should be tolled. And I think he had much longer than the six months he took to file it. And thank you for giving me a chance to respond. Thank you. Thank you. We thank both counsel for their arguments. The case is submitted.
judges: Alarcon, Gould, Clifton